UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRELL AINSWORTH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. HUNTER,<br><br>　　　　Defendant. | No.  2:24-cv-01347-DAD-CSK (PC)<br><br>ORDER DECLINING TO ADOPT THE JUNE 14, 2024 FINDINGS AND RECOMMENDATIONS, ADOPTING THE JULY 1, 2024 AND JULY 10, 2024 FINDINGS AND RECOMMENDATIONS, AND DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTIONS<br><br>(Doc. Nos. 12, 14, 15, 17, 18, 22) |

Plaintiff Tyrell Ainsworth is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**A.     The Findings and Recommendations Issued on June 14, 2024**

On June 14, 2024, the assigned magistrate judge issued findings and recommendations recommending that this action be dismissed with prejudice upon screening because of plaintiff's failure to state a cognizable claim for retaliation in violation of the First Amendment. (Doc. No. 12.) Specifically, the pending findings and recommendations concluded that "plaintiff's statement was not protected speech because it was confrontational and disrespectful." (*Id.* at 4.)

/////

1

Those findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.* at 4–5.) Plaintiff filed objections on July 1, 2024, but those objections did not meaningfully address the findings and recommendations. (Doc. No. 16.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 304, the court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, including plaintiff's objections, the undersigned declines to adopt the findings and recommendations issued on June 14, 2024.

Plaintiff alleges the following in his first amended complaint (FAC). It is widely known among plaintiff's fellow prisoners that defendant R. Hunter, a physical therapist, is racist and that she often "writ[es] up" Black inmates for "indecent exposure." (Doc. No. 11 at 2–3.) On July 13, 2022, defendant Hunter asked plaintiff what was in his hands. (*Id.* at 2.) Plaintiff showed defendant that he was holding a bowl. (*Id.*) Plaintiff alleges that in making this inquiry defendant had assumed, and was implying, that plaintiff had been masturbating. (*Id.*) The following day, plaintiff overheard defendant Hunter speaking rudely to a Black inmate. (*Id.* at 3.) At that time, plaintiff was reminded of defendant's question posed to him on the previous day, prompting plaintiff to say to another prisoner that plaintiff "should write [defendant] up for voyeurism."[1] (*Id.*) Defendant Hunter was in earshot of plaintiff when he made this statement. (*Id.*) Defendant

---

[1] The undersigned notes that plaintiff is proceeding *pro se* and, somewhat confusingly, refers to himself in the third person throughout his FAC. As a result, it appears that the magistrate judge may have interpreted plaintiff's statement "*he* should write her up for voyeurism" (emphasis added), as plaintiff meaning that another inmate should write up defendant Hunter. In the undersigned view, however, a more accurate reading of the complaint is that plaintiff is alleging that what he spoke out loud was "I should write her up," and that plaintiff is merely phrasing his allegations in the third person throughout his FAC. In this regard, the undersigned notes that plaintiff also alleges that his statement was made "based off the incident on 7/13/24," i.e., the incident where defendant Hunter asked plaintiff what was in his hands. This allegation certainly implies that plaintiff meant he, plaintiff, should write up defendant Hunter, not that another prisoner should do so. Moreover, in his original complaint, plaintiff alleged "I stated to [another inmate] I should write her up for voyeurism." (See Doc. No. 1 at 3.) While telling another inmate that they should file an inmate grievance against an officer in an officer's presence might arguably be construed as inciting disorderliness or being disrespectful, stating that you yourself should file such an inmate grievance against an officer is protected conduct under the authorities cited in this order.

then wrote two false rules violation reports against plaintiff in retaliation for plaintiff's comment. (*Id.*)  Plaintiff appears to allege that he was placed into administrative segregation as a result of defendant's false rules violation reports, though plaintiff's allegations are somewhat unclear in this regard.  (*See id.* at 5.)  Finally, plaintiff alleges that he was later found not guilty of both the rules violation reports filed by defendant Hunter against him.  (*Id.* at 4.)  Plaintiff provides as an attachment to his FAC a purported copy of "Disciplinary Hearing Results" with an entry reflecting that "[t]he Senior Hearing Officer does not find enough supporting evidence to find [plaintiff] guilty."  (*Id.* at 31–36.)

Within the prison context, a claim of First Amendment retaliation requires a prisoner to allege five elements:  (1) the prisoner engaged in protected conduct; (2) the defendant took adverse action against the prisoner; (3) a causal connection exists between the adverse action and the protected conduct; (4) the defendant's acts chilled the prisoner's exercise of their First Amendment rights; and (5) the retaliatory action did not reasonably advance a legitimate correctional goal.  *Watison v. Carter*, 668 F.3d 1108, 1114–15 (9th Cir. 2012).

The pending findings and recommendations issued on June 14, 2024 concluded with respect to the first element that "plaintiff's statement was not protected speech because it was confrontational and disrespectful." (Doc. No. 12 at 4) (citing *Jackson v. Austin*, No. 2:14-cv-00592-KJM-KJN, 2014 WL 4656201, at *3 (E.D. Cal. Sept. 16, 2014)); *see also Jackson*, 2014 WL 4656201, at *3 ("[A] number of district courts have found that verbal challenges to prison officials that are argumentative, confrontational, and disrespectful are not protected by the First Amendment.").

The undersigned concludes that plaintiff has plausibly alleged that he engaged in protected conduct by stating that he "should write [defendant Hunter] up for voyeurism."  (*See* Doc. No. 11 at 3.)  "A majority of district courts in California have held that an inmate's threat to file a prison grievance is entitled to First Amendment protection."  *Loftis v. Montes*, No. 2:18-cv-04769-JFW-GJS, 2019 WL 3806388, at *4 (C.D. Cal. June 25, 2019), *report and recommendation adopted*, 2019 WL 3802187 (E.D. Cal. Aug. 13, 2019); *see, e.g.*, *Hackworth v. Arevalos*, No. 1:19-cv-01362-ADA-CDB, 2022 WL 18027835, at *7 (E.D. Cal. Dec. 30, 2022)

("Threatening to file an inmate grievance is also protected activity."), *report and recommendation adopted*, 2023 WL 2751532 (E.D. Cal. March 31, 2023).  Here, plaintiff told another inmate that he was considering "writ[ing] up" defendant Hunter for "voyeurism" in light of defendant's alleged propensity to "writ[e] up" Black prisoners for "indecent exposure," and particularly after defendant Hunter's questioning of plaintiff the day before.  (*See* Doc. No. 11 at 2–3.)

The court finds that plaintiff's allegations are closer to those cases in which district courts have found statements made by prisoners to constitute protected speech rather than those in which statements by prisoners have been found to be confrontational, unprotected speech.  *See, e.g.*, *Loftis*, 2019 WL 3806388, at *3–4 (finding no protected conduct where the plaintiff "(1) challenged Montes' attitude and tone, (2) told Montes to relax, and (3) demanded that Montes stop speaking to [the plaintiff] disrespectfully" but finding protected conduct in a later incident where the plaintiff allegedly "told Montes that he intended to report his conduct via a formal complaint"); *Hackworth*, 2022 WL 18027835, at *7 ("In *Johnson*,[2] the district court found that the plaintiff's statements, which were argumentative, confrontational, disrespectful, and 'laced with expletives,' were not protected speech.  The *Johnson* court cited other cases that distinguished between, on the one hand, 'an attempt to assert a prison grievance'—for which [the plaintiff's] comment to [the defendant] that he would '602 your fat ass' arguably is akin—to prisoner statements that were mere insults, put-downs, and otherwise disconnected from merit-based grievances.") (internal citations omitted); *cf. Cass v. Yousefpour*, No. 1:20-cv-01481-JLT-BAK-SKO (PC), 2022 WL 21825820, at *2 (E.D. Cal. Jan. 14, 2022) ("Plaintiff argues that these cases state that verbal 'attempt[s] to redress a grievance verbally [sic] is protected conduct under a First Amendment retaliation claim.' . . . In each of those cases, the plaintiff filed a grievance and/or made threats to sue, file a grievance, or file criminal charges, which the courts considered to be protected speech under the First Amendment.  In this case, Plaintiff did not take any of these actions.").

/////

---

[2] *Johnson v. Carroll*, No. 2:08-cv-02494-JAM-KJN, 2012 WL 2069561 (E.D. Cal. June 7, 2012), *report and recommendation adopted*, 2012 WL 3756483 (E.D. Cal. Aug. 28, 2012).

As to the remaining four elements of his retaliation claim, plaintiff's allegations that defendant filed multiple false rules violation reports against him, of which he was later found not guilty, and pursuant to which he was either threatened with or subjected to administrative segregation, suffice to state a claim for retaliation under the First Amendment. *See Watison*, 668 F.3d at 1115 (reversing the district court and concluding that the plaintiff had alleged facts sufficient to state a First Amendment retaliation claim where the plaintiff alleged that he filed grievances against the defendant, the defendant "filed a false disciplinary charge against him," the false charge was filed shortly after and in retaliation for the filing of grievances, and the plaintiff was placed in administrative segregation). The undersigned concludes that dismissal of plaintiff's First Amendment retaliation claim at screening is not warranted here. *See, e.g.*, *Lipsey v. Goree*, No. 1:17-cv-00997-DAD-JLT, 2018 WL 4638309, at *2–4 (E.D. Cal. Sept. 26, 2018) (concluding that the plaintiff had alleged sufficient facts to state a First Amendment retaliation claim at the screening stage where the plaintiff had alleged, among other things, "a chronology of events from which retaliation can be inferred").

**B.     The Findings and Recommendations Issued on July 1, 2024**

On July 1, 2024, the magistrate judge issued findings and recommendations recommending that plaintiff's first motion for injunctive relief be denied. (Doc. No. 15.) Specifically, the magistrate judge concluded that plaintiff "seeks injunctive relief against CDCR Director Macomber and prison officials at Kern Valley State Prison, who are not defendants in this action," and that "the claims raised and relief sought in the pending motion are unrelated to the claims raised in the amended complaint against defendant Hunter." (*Id.* at 2–3.)

Those findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.* at 4.) Plaintiff has not filed any objections to the findings and recommendations issued on July 1, 2024.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 304, the court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the

/////

/////

court concludes that the findings and recommendations issued on July 1, 2024 are supported by the record and by proper analysis.[3]

### C. The Findings and Recommendations Issued on July 10, 2024

On July 10, 2024, the magistrate judge issued findings and recommendations recommending that plaintiff's second motion for injunctive relief be denied. (Doc. No. 18.) Specifically, the magistrate judge concluded that plaintiff "seeks an order against the California Department of Corrections and Rehabilitation ('CDCR') Director, who is not a defendant in this action," and that "the claims raised and relief sought in the pending motion are unrelated to the claims raised in the amended complaint against defendant Hunter." (*Id.* at 3–4.)

Those findings and recommendations were served on the parties and contained notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.* at 5.) Plaintiff has not filed any objections to the findings and recommendations issued on July 10, 2024.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 304, the court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the court concludes that the findings and recommendations issued on July 10, 2024 are supported by the record and by proper analysis.

**CONCLUSION**

Accordingly:

1. The court declines to adopt the findings and recommendations issued on June 14, 2024 (Doc. No. 12);
2. The undersigned finds that plaintiff's first amended complaint states a cognizable claim for retaliation in violation of the First Amendment ;
3. The findings and recommendations issued on July 1, 2024 (Doc. No. 15) are adopted in full;

/////

---

[3] On August 19, 2024, plaintiff filed a motion requesting an extension of any deadlines in this action on the grounds that he had been repeatedly transferred from one prison to another. (Doc. No. 22.) Plaintiff's motion is denied as moot in light of this order.

4. The findings and recommendations issued on July 10, 2024 (Doc. No. 18) are adopted in full;

5. Plaintiff's motions for injunctive relief (Doc. Nos. 14, 17) are denied;

6. Plaintiff's motion for extension of any deadline in this action (Doc. No. 22) is denied as moot in light of this order; and

7. This matter is referred back to the assigned magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: **November 14, 2024**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE